UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GLENN S.,

               Plaintiff,

          v.                                                    **DECISION AND ORDER**
                                                                        20-CV-669S
COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____


      1.     Plaintiff Glenn S.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for disability insurance benefits and period of disability under Title II of the Act.  (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.     Plaintiff protectively filed his application for benefits on February 28, 2013. (R.[2] at 98.) Plaintiff alleged disability beginning on April 1, 2011, due to arthritis, depression, anxiety, arthritis in his back, type 2 diabetes, right shoulder impairment, bilateral knee impairment, and bilateral foot and ankle impairment. (R. at 92-93.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ").  ALJ Stephen Cordovani held a hearing on November 17, 2014, and,

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by her first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

on May 5, 2015, issued a decision denying Plaintiff's application for benefits. (R. at 32-91, 10-17.) Plaintiff appealed to the district court, and on September 17, 2018, District Judge Michael Telesca issued an order remanding Plaintiff's case for reconsideration. (R. at 950-964.)

3.      Upon remand, ALJ Steven Cordovani held a hearing on December 5, 2019, at which Plaintiff, represented by his attorney, appeared and testified. (R. at 839-853.) Vocational Expert Timothy Janikowski appeared and testified by telephone, as did medical expert Dr. Jeff Hansen. At the time of the hearing, Plaintiff was 59 years old, with some college and prior work experience as a bookbinder, laborer, and forklift operator. (R. at 186.)

4.      The ALJ considered the case de novo and, on February 4, 2020, issued a written decision denying Plaintiff's application for benefits. (R. at 834-848.) Plaintiff then filed the current action on June 3, 2020, challenging the Commissioner's final decision.[3]

5.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 13, 16.)  Plaintiff filed a response on June 11, 2021 (Docket No. 17), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Defendant's motion is granted, and Plaintiff's motion is denied.

6.      A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there

---

[3] The ALJ's February 4, 2020, decision became the Commissioner's final decision in this case on the 61st day after the decision.

has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity

of this analysis in <u>Bowen v. Yuckert</u>, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

      9.     The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); <u>see also</u> 20 C.F.R. § 416.920; <u>Rosa v. Callahan</u>, 168 F.3d 72, 77 (2d Cir. 1999).

      10.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  <u>See</u> <u>Bowen</u>, 482 U.S. at 146 n.5; <u>Ferraris v. Heckler</u>, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20

C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

11.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of April 1, 2011 through his date last insured of September 30, 2012. (R. at 837.) At step two, the ALJ found that Plaintiff has the following severe impairments: spine disorder, left knee and bilateral foot and ankle disorder, and depression. (R. at 837.)

12.     The ALJ then found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments in 20.C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 838.)

13.     Next, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work, except that he

> can sit up to six hours total during the work day; …can stand and walk, in other words be on his feet, up to three hours total during the work day with any continuous period of 45 minutes on his feet to be followed with up to two to five minutes off his feet, during which time he can be on task, before resuming standing or walking activities, for a total of up to three hours standing or walking; [he] can lift and carry 20 pounds maximum and 10 pounds frequently; [he] can occasionally climb ramps and stairs, frequently balance on level ground, with no balancing on uneven ground or terrain; [he] can occasionally kneel but cannot crawl, he can occasionally squat, frequently bend at the waist, and cannot climb ladders, ropes, scaffolds, nor work at unprotected heights or around dangerous moving mechanical parts; [he] can occasionally operate non mechanical foot controls; i.e. can manipulate foot controls but not requiring the exertion of great force, and can push or pull occasionally only up to 40 pounds; [he] would

require permitted cane use for ambulation on uneven ground or for any walking greater than the equivalent of three blocks; [he] cannot work in extreme heat or cold, or wet or damp conditions; [he] can have no supervisory duties, can understand, remember, and carry out simple instructions and tasks; and [he] can have frequent interaction with co-workers, supervisors, and the public.

(R. at 840.)

14.    At step four, the ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work. (R. at 845.)  At step five, the ALJ found that there is a significant number of jobs in the national economy that Plaintiff can perform. (R. at 846.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 848.)

15.    Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because the ALJ erroneously classified what was actually a sedentary RFC as "light," because the testimony of the Vocational Expert was inconsistent and unsupported, and because the ALJ improperly refused to admit new evidence that Plaintiff submitted after the hearing. Defendant argues that the ALJ's decision is supported by substantial evidence.  For the following reasons, Defendant's arguments are convincing.

16.    Plaintiff first argues that the ALJ mistakenly classified his RFC as "light," while the ability to stand or walk for only 3 hours per day, and to sit for 6 hours per day, is more compatible with a classification as sedentary. As an initial matter, Plaintiff mischaracterizes the RFC as specifying that he would need to sit continuously for 6 hours at a time, after 3 unbroken hours of standing. In fact, the RFC allows for 3 hours of standing total per day, not necessarily at one time, with breaks to sit after any 45 minutes of standing. This is consistent with a sit/stand option commonly found in light jobs.

17.     Further, light work encompasses a number of jobs, some of which require more standing than others. A job is in the light category "when it requires a good deal of walking or standing, *or* when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §404.1567(b) (emphasis added.) The relative amounts of sitting and standing are thus not the only factor determining whether work is light or sedentary. A light job also "generally involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds," although, as with standing, this is not a categorical rule, and some light jobs require only lifting "very little" weight. Id. Sedentary jobs, by contrast, require "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." Id.(a). Here, the RFC assessed by the ALJ required, in addition to the above-mentioned sit-stand option, "lifting and carrying up to 20 pounds occasionally and ten pounds frequently, pushing and pulling of up to 40 pounds, and occasional operation of mechanical foot controls." (R. at 840.) These requirements exceed the parameters of a sedentary job and fit squarely into the regulations' parameters for light work. Plaintiff's argument is therefore unavailing.

18.     Plaintiff next argues that the testimony of VE Jankowski regarding accommodations at the jobs he described was inconsistent and unsupported. Plaintiff argues, specifically, that the employer surveys that the VE conducted do not support the VE's testimony that the jobs of bench assembler, gate guard, and folder—which the VE testified that Plaintiff could perform—could be done with a stool.

19.     At the hearing, VE Jankowski testified that a worker with Plaintiff's RFC, that is, who was limited to three hours of total standing or walking, could do the jobs of bench

assembler, gate guard, and folder. (R. at 905-06.) Plaintiff's attorney questioned the VE about the basis of his testimony. The VE cited the Dictionary of Occupational Titles, the occupational outlook handbook, employer descriptions, and labor market surveys he had conducted, in which he or students he supervised had inquired whether employers would provide a worker with a stool. (R. at 907.) The VE agreed to supply Plaintiff's attorney with summaries of the surveys he had conducted. (R. at 907-08.)  These surveys were provided to Plaintiff's attorney and are found in the record at pp. 1173-74.

20.     Plaintiff argues that the VE's testimony is unsupported because the surveys he provided do not contain data on sitting options for the gate guard and folder jobs. But the surveys contain more data than Plaintiff claims they do. The data relate that 100% of employers surveyed allow for the use of a stool for bench assemblers, 91 % for gate guards, and 73 % for folders. (See R. at 1174, 1176). Plaintiff is mistaken in claiming that the summaries do not contain any information about the gate guard and folder jobs. This Court finds that the VE's survey evidence supports both his testimony and the ALJ's determination.

21.     Further, "a vocational expert is not required to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally." Biestek v. Berryhill, 139 S. Ct. 1148, 1157, 203 L. Ed. 2d 504 (2019). In other words, "a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data." Id. at 1157.

22.     Here, the VE cited as support the Dictionary of Occupational Titles, the occupational outlook handbook, and his own labor market survey summaries. This would

constitute a sufficient basis for his testimony, even had he not submitted the summaries of his surveys for review.

23.     Finally, Plaintiff argues that the ALJ abused his discretion by refusing to admit additional evidence—a lumbar MRI dated November 28, 2014—after the hearing. However, this argument is moot. As Defendant notes, the additional evidence Plaintiff sought to submit after the hearing was actually a part of the record at the time of the hearing. (See R. at 1811-12, also marked as B10F.) Further, Plaintiff argues that, had the medical expert directly addressed this evidence, he would have opined that Plaintiff could stand or walk even fewer than three hours total per day during the relevant period of 2011-12. But the medical expert, Dr. Hansen, referred explicitly to the medical evidence at B10F in his testimony. (R. at 866.) (regarding lumbar stenosis: "I don't see much mention of it in the evidence until like about oh 2014, like Exhibit 10F is the big - big exhibit from the VA medical center in Buffalo, from 2014 on he was having a lot of issues.")  At this point in the hearing, ALJ was questioning Dr. Hansen about what the medical evidence from after the relevant period revealed about Plaintiff's condition during the relevant period, that is, between April 1, 2011, and September 30, 2012. Dr. Hansen testified that he saw strong evidence of ulnar nerve problems, knee and foot problems during that period, but that the evidence for Plaintiff's lumbar stenosis did not appear until 2014 (the year when the contested lumbar MRI was performed).

24.     There is nothing in the record to suggest that Dr. Hansen did not review the 2014 MRI, which, as noted, was in the record before him. He in fact testified that lumbar issues become very clear in 2014. When Plaintiff's attorney directed his attention to evidence of Plaintiff's complaints of back pain as early as 2009, Dr. Hansen revised his

initial opinion of 5 hours of standing to 3 hours of standing. (R. at 882-86.) But this does not necessarily mean, as Plaintiff argues it does, that, had he directly discussed one specific piece of evidence from 2014, he would have lowered the time Plaintiff could stand even further.

25.     The ALJ gave great weight to Dr. Hansen's testimony, and adopted his opinion that Plaintiff could stand or walk a total of 3 hours per day. In formulating his RFC, the ALJ also considered Plaintiff's activities of daily living during the relevant period. While Plaintiff speculates that Dr. Hansen would have reduced his hours of standing if he had been directed to address this one piece of evidence, this is simply speculation. This Court finds that Dr. Hansen's testimony was based on a review of the medical record, and is supported by his citations to the record, which contains the imaging Plaintiff argues was absent. The ALJ's RFC formulation—based on Dr. Hansen's testimony–is therefore supported by substantial evidence.

26.     Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled, and Plaintiff's aforementioned contentions are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 16) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:       July 27, 2021
             Buffalo, New York

                                        s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                     United States District Judge